```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF WYOMING

 3   _____

 4
     UNITED STATES OF AMERICA,          DOCKET NO. 15-CR-136-F
 5
             Plaintiff,
 6
             vs.
 7                                      Cheyenne, Wyoming
     J.C. CHRISTOPHER PULHAM,           December 11, 2015
 8                                      1:03 p.m.
             Defendant.
 9

10   _____

11              TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

12           BEFORE THE HONORABLE NANCY D. FREUDENTHAL
                 CHIEF UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14   For the Plaintiff:       JAMES C. ANDERSON
                              Assistant United States Attorney
15                            UNITED STATES ATTORNEY'S OFFICE
                              2120 Capitol Avenue, Suite 400
16                            P.O. Box 668
                              Cheyenne, WY 82003-0668
17
     For the Defendant:       JAMES H. BARRETT
18                            Assistant Federal Public Defender
                              OFFICE OF THE FEDERAL PUBLIC DEFENDER
19                            214 West Lincolnway
                              Suite 31-A
20                            Cheyenne, WY 82001

21   Court Reporter:          Janet Davis
                              Registered Diplomate Reporter
22                            Federal Certified Realtime Reporter
                              Federal Official Court Reporter
23                            2120 Capitol Avenue, Room 2226
                              Cheyenne, WY  82001
24                            (307)635-3884/jbd.davis@gmail.com
     Proceedings recorded by digital stenography; transcript
25   produced with computer-aided transcription.
```

DOCKET 15-CR-136-F                CHANGE OF PLEA                              2

 1          (Proceedings commenced 1:03 p.m., December 11, 2015.)

 2              COURTROOM DEPUTY:  In criminal matter Case

 3   No. 15-CR-136-F, United States of America versus J.C.

 4   Christopher Pulham, set today for a change of plea hearing.

 5       Counsel, please state your appearances.

 6              MR. ANDERSON:  Jim Anderson on behalf of the United

 7   States.

 8              MR. BARRETT:  Jim Barrett on behalf of Mr. Pulham.

 9              THE COURT:  Good afternoon, gentlemen.

10              Mr. Barrett, are we here in anticipation of a change

11   of plea?

12              MR. BARRETT:  We are, Your Honor.

13              THE COURT:  If you and your client would please step

14   forward, we will get him sworn in.

15       (Defendant sworn.)

16              THE COURT:  Can you please state your name for the

17   record?

18              THE DEFENDANT:  J.C. Christopher Pulham.

19              THE COURT:  Mr. Pulham, I asked the courtroom deputy

20   to swear you in.  I will have some questions to address with

21   you.  It is important that you respond to my questions

22   truthfully.  Failure to do so could result in later prosecution

23   for perjury or false swearing.  Do you understand that?

24              THE DEFENDANT:  Yes, ma'am.

25              THE COURT:  How old are you?

DOCKET 15-CR-136-F            CHANGE OF PLEA                    3

1          THE DEFENDANT:  43.

2          THE COURT:  Where were you born?

3          THE DEFENDANT:  Las Vegas, Nevada.

4          THE COURT:  How far did you go in school?

5          THE DEFENDANT:  I have my GED and attended a semester

6    at a college.

7          THE COURT:  Do you have a trade or occupation?

8          THE DEFENDANT:  I'm currently employed at a hotel.

9          THE COURT:  Have you been treated recently for drug

10   addiction or mental illness of any kind?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  Are you under the influence of alcohol or

13   any drug?

14         THE DEFENDANT:  No, ma'am.

15         THE COURT:  Are you under the care of a doctor or

16   taking any prescription medicine?

17         THE DEFENDANT:  No, ma'am.

18         THE COURT:  I've -- have a copy of an Indictment which

19   is just a charging document.  It's not evidence of guilt or

20   evidence of anything.  Have you had an opportunity to read and

21   discuss the charging document with your attorney, Mr. Barrett?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  And are you fully satisfied with the

24   advice and representation you've received to date from your

25   attorney?

DOCKET 15-CR-136-F                CHANGE OF PLEA                                    4

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Good.  As we go along, if you have

3    questions for me, please speak up.  Feel free to interrupt me.

4    You're not delaying these proceedings at all.  This is the best

5    time to get your questions answered.  If you need to talk to

6    your attorney, similarly, just interrupt.  You can step away

7    from the microphone and have a private discussion.

8          Will you let me know if you have any questions or need

9    to talk to your attorney?

10          THE DEFENDANT:  Yes, ma'am.  Thank you.

11          THE COURT:  Good.  I also received and read a copy of

12    the plea agreement which I think either has been filed or will

13    be filed shortly.

14          Did you read and discuss this plea agreement with your

15    attorney before you signed it?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Do you believe that you understand the

18    terms of the plea agreement?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Are all the promises and representations

21    from the Government written down in the plea agreement?

22          THE DEFENDANT:  I believe so, yes, ma'am.

23          THE COURT:  Has anyone made any promise or assurance

24    to you that might be in your mind, in terms of affecting how

25    you plead in this case, that isn't written down in the plea

1   agreement?  Any side deals or backroom deals?

2              THE DEFENDANT:  No.

3              THE COURT:  All right.  Has anyone threatened you or

4   threatened anyone you care about to get you to sign the plea

5   agreement?

6              THE DEFENDANT:  No, ma'am.

7              THE COURT:  Do you understand that I'm not a party to

8   the plea agreement?  I haven't signed it.  If there are

9   recommendations in the plea agreement that would affect

10  sentencing -- and this is a pretty bare bones plea agreement,

11  but if there are recommendations in there that in your mind you

12  are hoping to receive a lower sentence because of that

13  recommendation, I'm not bound to accept the recommendation.  I

14  bring these matters up, really, for illustration to talk about

15  worst-case scenario, not to suggest that the worst-case

16  scenario is likely to play out.

17             THE DEFENDANT:  I understand that.

18             THE COURT:  But if I don't accept a recommendation,

19  even something jointly by the parties, that could drive the

20  sentence higher than what you might expect or hope for.  Just

21  because you get a sentence that's harsher than what you hope

22  won't give you an opportunity to withdraw a guilty plea and go

23  back to a plea of not guilty, if I conclude it is a knowing and

24  voluntary plea.  Do you understand that?

25             THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Any questions so far?

2          THE DEFENDANT:  No, ma'am.

3          THE COURT:  Mr. Barrett, were all formal plea offers

4    from the Government communicated to your client?

5          MR. BARRETT:  They were, Your Honor.

6          THE COURT:  I can't remember -- I probably have asked

7    this, but has anyone threatened you or threatened anyone that

8    you care about to get you to sign the plea agreement?

9          THE DEFENDANT:  No, ma'am.

10          THE COURT:  All right.  Let me talk about the

11    consequences of considering a guilty plea and pleading guilty.

12    Our focus is on Count 1 through this discussion that we will

13    have today.  Under the plea agreement at sentencing if things

14    go as expected, we can anticipate the Government would move to

15    dismiss Count 2 because they've agreed to do that in the plea

16    agreement.

17          So we're going to set Count 2 aside and focus on Count

18    1 in terms of the consequences of choosing to plead guilty to

19    Count 1.  That's ultimately your choice.

20          First and significantly, this is a felony offense that

21    we're here to address today.  If I accept your guilty plea

22    today, you will be adjudged guilty of a felony and that will

23    have an immediate consequence.  As an adjudged felon, you won't

24    be able to own or possess firearms or ammunition.  You won't be

25    able to vote, serve on a jury or serve on a grand jury.  You

1    won't be able to run for public office.

2          If you had been born outside the United States and not

3    here with legal status -- and I know you're a United States

4    citizen by birth, but if that had been otherwise, it would have

5    an important immigration consequence, or could.  So I want to

6    flag that as well to give you a full impression of being

7    adjudged guilty of a felony.

8          Some felonies can also affect where you can live or

9    where you can work, depending upon the screening or

10   registration as a sex offender.

11         Do you understand that we're here to address a felony

12   offense?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  The next consequence of choosing to plead

15   guilty to a felony offense of possession of child pornography

16   is the possibility and, in fact, the likelihood of time in

17   prison.  Most people who come to federal court are looking at

18   going into the Bureau of Prisons system.  We have very few

19   probation cases in federal court.  The range for time in

20   custody is from zero, no time, to as much as 20 years for an

21   offense such as this.

22         Do you understand that time in prison may be a result

23   of choosing to plead guilty to this offense?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  The next consequence is the possibility of

DOCKET 15-CR-136-F          CHANGE OF PLEA                    8

1   a fine.  The fine range is quite large.  It is from zero, no

2   fine, to as much as $250,000.

3           Now, I don't impose fines people can't afford to pay,

4   so we're not really looking at that high fine range, but based

5   upon your financial circumstances or time in custody and the

6   ability to be employed while in custody, a fine may be a

7   consequence of choosing to plead guilty.  I'll make my decision

8   at sentencing about whether a fine can be expected in this

9   case, and I will announce it at sentencing.

10          Monetary obligations are due immediately at

11  sentencing.  Many people can't afford to pay their financial

12  obligations then, and they go on kind of a payment plan with

13  payments in custody and after custody as well until their

14  financial obligation is satisfied.

15          Do you understand that a fine may be a consequence of

16  choosing to plead guilty?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  The next consequence is time on

19  supervision.  After you are released from custody, people go on

20  supervised release.  That's why it is called supervised

21  release.  It is after release.  It is supervision under a

22  probation officer.  The term of supervision is no less than

23  five years.  The maximum term is a life term of supervision.

24          There will be conditions imposed on your term of

25  supervision.  Typical conditions include reporting to the

1    probation officer.  Some conditions include a search condition,

2    so if the probation officer believes you're in violation of

3    your conditions of supervision or possess contraband, the

4    probation officer can order a search.

5            For offenses such as possession of child pornography,

6    there are often restrictions on Internet-capable devices so

7    that we can effectively screen during the term of supervision.

8            We're not here today to decide the conditions, but I

9    talk about them in summary fashion by illustrating a few sample

10   conditions to impress upon you that the conditions can be and

11   are restrictive, and if you violate the conditions, you can be

12   arrested on a warrant, brought in to answer to the accusation

13   that you violated a condition.

14           If you violated, you can be sentenced to additional

15   time in custody with a new term of supervision to follow.  So

16   it can be a bit of a revolving door for people that can't

17   succeed on supervision.

18           Do you have any questions about the supervised release

19   provision as I've explained it?

20           THE DEFENDANT:  No, ma'am.

21           THE COURT:  Mr. Anderson.

22           MR. ANDERSON:  If I might interrupt for a moment, Your

23   Honor, in regards to the consequences of the defendant's plea,

24   the plea agreement misstates the top end of the penalty in this

25   particular matter.  The defendant was advised at arraignment

DOCKET 15-CR-136-F            CHANGE OF PLEA                    10

1    that he could be punished by up to 20 years of imprisonment.

2    That's the notification that's attached to the Indictment.

3    However, the plea agreement reflects a 10-year maximum sentence

4    and that's incorrect.  It is a 20-year sentence that the

5    defendant could be sentenced to.  I just wanted to put that on

6    the record.

7            THE COURT:  Thank you.

8            MR. BARRETT:  I believe the plea agreement also

9    indicates no minimum time of supervision, Your Honor.

10           MR. ANDERSON:  And it is a five to life.

11           MR. BARRETT:  And I've previously advised Mr. Pulham

12   as well that it is not less than five years.

13           THE COURT:  All right.  Do you have any confusion

14   about the discrepancy between what's in the plea agreement and

15   my advisements today?

16           THE DEFENDANT:  No, Your Honor.

17           THE COURT:  And again, if you've got any questions,

18   questions for your attorney or just need to chat with him, let

19   me know.  You can step away, sit down, have a discussion.  We

20   can take a break as well.  All right?

21           THE DEFENDANT:  Thank you, Your Honor.

22           THE COURT:  Okay.  So any questions about supervised

23   release?

24           THE DEFENDANT:  No, ma'am.

25           THE COURT:  The next consequence is a $100 special

1   assessment.  This is assessed in federal court per count, and

2   so it would be a total of $100 for this Count 1.  That's due in

3   addition to any fine.  It goes into a special fund for victims

4   of crime.  Again, as a monetary obligation, it is due

5   immediately, but often it's paid over time.

6           Do you understand the $100 special assessment?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  For offenses such as this, you'll be

9   required to register as a sex offender.  That's a consequence

10  of this offense if you choose and/or are adjudged guilty of

11  this offense.  That registration must remain current and you

12  must be registered in any jurisdiction in which you reside, are

13  employed or are a student.

14          Do you understand that you will be required to

15  register by federal law as well as by a condition on your

16  supervision?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Another consequence is the possibility of

19  restitution.  These cases are thorny when restitution is

20  concerned because we've got children who -- whose images have

21  been captured and are prevalent on the Internet, and they often

22  feel revictimized when their images are out there and

23  additional people are viewing them.  And so we may receive

24  restitution requests depending on whether there are any

25  identifiable victims in the images that you are alleged to have

1    possessed and whether those victims are on record seeking

2    restitution.

3            It's a bit thorny.  We try to arrive at some

4    understanding or agreement or documentation as to why your

5    particular viewing is any more of a revictimization than the

6    worldwide and other viewers.  So it can be difficult and

7    complicated.  I'm not saying restitution will be requested or

8    even required, but I wanted to discuss that as a consequence

9    for offenses such as this.  This consequence has surfaced and

10   will continue to surface until the law is better settled and/or

11   the victims' full restitution requests have been satisfied.

12           Do you understand that restitution may be -- other

13   than just another financial obligation may be a consequence of

14   choosing to plead guilty?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  Any questions about the consequences as

17   I've explained them up till now?

18           THE DEFENDANT:  No, ma'am.

19           THE COURT:  Have you and your attorney discussed the

20   Federal Advisory Sentencing Guidelines and how they may apply

21   to you in this case?

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Good.  As you know, the guidelines weigh

24   two primary factors.  The first one is the offense level.  The

25   offense level is calculated by beginning with a base offense

DOCKET 15-CR-136-F            CHANGE OF PLEA                    13

1   level which is assigned to all offenses for possession of child

2   pornography and then that level can be enhanced based upon a

3   variety of factors.

4        The number of images is frequently an enhancement we

5   see here in federal court, particularly if we've got videos

6   because the videos are a collection of images and so the

7   numbers associated with videos can drive upward the count

8   pretty rapidly and result in an enhancement.

9        The ages of the victims can be an enhancement.

10  Whether there's sadistic conduct involved can be an

11  enhancement.  So enhancements, particularly for child

12  pornography possession, really pile on.

13       Some enhancements by practice we don't apply, but it

14  is my job to correctly calculate that offense level and explain

15  if I won't accept a particular enhancement.

16       The other main consideration is your past criminal

17  history.  That's usually much more straightforward.  If you

18  have no countable convictions, you will be in the best criminal

19  history category, Category I.  If you have countable

20  convictions that score against you, your Criminal History

21  Category could creep up accordingly.  I don't know much about

22  you or the nature of the offense conduct at issue, so I can't

23  give you an estimate about how you might guideline for this

24  particular offense, considering your past criminal history.

25       Do you understand that?

DOCKET 15-CR-136-F                CHANGE OF PLEA                        14

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  But do you understand that I must

3    correctly calculate the guidelines by offense level and

4    criminal history, announce the guideline range and consider

5    that guideline range in arriving at a sentence that's part of

6    the procedure that I use for sentencing?  Do you understand

7    that?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  And I can depart or vary from the

10   guidelines to arrive at a sentence that's sufficient, but not

11   greater than necessary, to punish the offense conduct,

12   considering the history and characteristics of the defendant.

13   We often have departures or variances in these sorts of cases.

14          Again, focusing on the worst-case scenario, I can

15   depart or vary upward if I find reasons, again, based upon

16   certain statutory factors.  They're largely the seriousness of

17   the offense and whether that's, in my mind, successfully

18   captured by the offense level and the history and

19   characteristics of the defendant.  And in the worst-case

20   scenario, those considerations could result in a sentence that

21   is either higher than the low end or even higher than the

22   guideline range.  Just because I impose a sentence that's

23   harsher than what you hope for won't give you a chance to go

24   back to a not guilty plea if I conclude that the guilty plea,

25   if you enter one today, is knowing and voluntary.  Do you

DOCKET 15-CR-136-F                CHANGE OF PLEA                        15

1    understand that?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  If at the end of sentencing you believe

4    the sentence that I announce is harsh or wrong or unreasonable

5    or something sticks in your mind that you have a complaint

6    about, please talk to your attorney.  He has a very short

7    period of time to file a Notice of Appeal.  Through a Notice of

8    Appeal your attorney can get the best review of the decision I

9    make.

10             If you let that time expire, you might have certain

11   other ways to complain about the sentence, but not the best

12   review that a direct appeal can afford.  So don't let

13   sentencing distract you from the decision about whether you

14   should talk to your attorney and get review.  Do you

15   understand?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  All right.  Any questions up till now?

18             THE DEFENDANT:  No, ma'am.

19             THE COURT:  At this time I want to talk about your

20   right to have this case heard in trial.  Even though the

21   attorneys have indicated a change of plea, you haven't pled

22   guilty.  You can, if you wish, have this case heard at trial;

23   put Government to its burden of proof, have the jury as finders

24   of fact.  Let me talk about all these important constitutional

25   rights that afford you fair, speedy, public trial, testing the

DOCKET 15-CR-136-F          CHANGE OF PLEA                    16

1   Government's case to the fullest extent possible.

2         If this case went to trial, it would be a speedy,

3   public trial, so the Government would have to get its case

4   ready to go.  There would be certain time excluded in

5   anticipation of a guilty plea, but if you don't plead guilty,

6   we'll just get this case back on the active docket, get it teed

7   up and ready to go to trial.

8         A jury would be called from around Wyoming to sit as

9   impartial judges of the facts of the case.  Jury selection is

10  an important phase of the case, a phase in which you

11  participate through your attorney.  We call 35 to 40 jurors or

12  potential jurors and seat them in the jury box to answer

13  questions on voir dire.  We question jurors to probe into their

14  background and experiences to figure out if they have a bias or

15  prejudgment about this case or this type of case.

16        Perhaps they know witnesses or the attorneys and they

17  can't let their friendship -- keep their friendship from

18  coloring their view of the case.  Maybe they have strong

19  opinions about the laws and they can't in good conscience apply

20  those laws and give the Government and you a fair trial.

21        Maybe they've had some experience in their life or

22  their family's life that has so affected them or colored their

23  judgment that, again, they can't put that out of their mind and

24  give you a fair trial or give the Government a fair trial.

25        These are the things we probe into.  If we have

1    questions about their ability to render a fair and impartial

2    verdict, I excuse those potential jurors and replace them with

3    other prospective jurors and start that questioning all over

4    again.

5            I tell you you participate because your attorney has

6    the right to ask questions, probe into the same kind of

7    background and experience, again, looking for the potential for

8    bias or prejudgment.  Your attorney can strike or excuse people

9    for no cause, just simply because you or your attorney suspect

10   that somebody might not be the best juror for this case or this

11   type of case.  That's why we call so many people in to seat 12

12   plus an alternate, because we excuse so many in the jury

13   selection process, hoping, again, to have the best jury to

14   render a fair and impartial verdict, applying the law and the

15   facts as they find them from the evidence presented at trial

16   without bias or prejudgment.

17           Once we have that best jury, we will impanel them and

18   the next phase of the case starts.

19           The Government goes first in presenting evidence

20   because the Government has the burden of proof.  That burden of

21   proof is proof beyond a reasonable doubt.  That is a high

22   burden of proof.  The Government may not meet its burden of

23   proof.  It is a burden of proof as to every element of the

24   offense.  You have no burden of proof.  You don't have to show

25   you're not guilty.  All you have to do is is essentially have

DOCKET 15-CR-136-F                 CHANGE OF PLEA                    18

1    your attorney argue that the Government has failed in meeting

2    its burden of proof.

3           Now, proof beyond a reasonable doubt is not proof

4    beyond all doubt, but the evidence, the testimony and the

5    exhibits must firmly convince the jury of your guilt before a

6    jury can return a verdict of guilty.

7           I say you have no burden of proof, and that also means

8    you have no obligation to take the stand and testify.  You

9    don't have to help the Government in meeting its burden of

10   proof by pleading guilty or telling your side of the story, if

11   the case went to trial.  You can stay silent, and I will

12   instruct the jury that they can't infer or conclude anything

13   simply because you don't take the witness stand.

14          You have the right to have your attorney present

15   throughout every course -- all phases of the trial as your

16   spokesperson and advocate.  His job is to make arguments, make

17   objections to the evidence, confront, cross-examine witnesses,

18   again, with an eye toward raising that reasonable doubt.

19          You have the right to a unanimous verdict, so the jury

20   must deliberate collectively, but each one of them must decide

21   the case for himself or herself.  They can't surrender that

22   judgment to another juror.  So if one juror concludes the

23   Government has not met its burden of proof by proof beyond a

24   reasonable doubt, the jury can't return a verdict of guilty.

25          Do you understand these important constitutional

1    rights to take your case to trial?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  Do you understand that if you go forward

4    with a guilty plea there is no jury that will be called.  I am

5    the only judge here.  I will have to judge the facts, so I need

6    to hear what happened here in this case which resulted in the

7    charges being brought.  I can't take a guilty plea from someone

8    who is not, in fact, guilty.

9            Do you understand that?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  Let's talk about the elements of the

12   offense because, again, whether it is today or during the

13   course of a jury trial, the Government must meet these

14   elements.  They must satisfy me in this proceeding, either with

15   statements from you or by their statements, that each of these

16   essential elements can be satisfied.

17           The first element is a time frame element.  The

18   Government alleges that the offense of possession of child

19   pornography occurred on or about June 15th, 2015.  The

20   Government may not prove this date precisely, but they must

21   have proof that the offense conduct occurred reasonably close

22   to this date.

23           The next element relates to you and the conduct as

24   charged, that you knowingly possessed material, namely, a 1

25   terabyte Seagate hard drive which contained images and video

1   depicting prepubescent children engaged in sexually explicit

2   conduct.

3          And the last element is that the images and recordings

4   of child pornography on that drive were produced using the

5   materials from that drive which is a product of the People's

6   Republic of China because that drive wasn't manufactured here

7   in Wyoming.  That drive was transported and affected interstate

8   commerce.

9          Do you understand these elements?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Mr. Barrett, how do you wish to proceed

12   with the factual basis?

13          MR. BARRETT:  Mr. Pulham can provide the basis, Your

14   Honor.

15          THE COURT:  All right.  Mr. Pulham, in your own words,

16   why don't you tell me what -- both where you were -- that's

17   also an element.  I need to know where you were because the

18   offense conduct has to occur here in the District of Wyoming --

19   where you were and what happened on June 16th, 2015, or around

20   that date that resulted in this charge being brought.

21          THE DEFENDANT:  It was on or around that day and I was

22   in Wyoming.  I was in Evanston, and I did have the material on

23   that particular hard drive, the Seagate, the 1 terabyte Seagate

24   hard drive, and that it did contain child pornography.  And I'm

25   not sure how to --

1          THE COURT:  In terms of the phrase "child

2    pornography," would you agree that you knew that the material

3    visually depicted children engaged in sexually explicit

4    behavior?

5          THE DEFENDANT:  Yes, ma'am, I was aware of the

6    material on the hard drive.

7          THE COURT:  I have the Prosecutor's Statement which

8    I've read.  Mr. Barrett -- and you have no reason to believe

9    that this hard drive or the images were produced here in

10   Wyoming?

11         THE DEFENDANT:  I don't believe so.  I have no reason

12   to believe that, yes.

13         THE COURT:  All right.  Mr. Barrett, I would invite

14   any supplementation.

15         MR. BARRETT:  I believe that's sufficient, Your Honor.

16         THE COURT:  Mr. Anderson, supplementation.

17         MR. ANDERSON:  The investigation revealed that the

18   defendant had been using a peer-to-peer software program to

19   obtain child pornography off the Internet.  He would load the

20   material onto his hard drive where he would subsequently view

21   it.  The images -- many of the images that he possessed

22   depicted children under the age of 12, or prepubescent children

23   and as the Court did note.  The hard drive was manufactured in

24   another locale or another state besides the State of Wyoming.

25         I think that those are the essential facts.  And

DOCKET 15-CR-136-F          CHANGE OF PLEA                    22

1   Mr. Pulham, when questioned by the law enforcement, admitted to

2   those -- to those facts.

3           THE COURT:  Would you agree that the images of

4   children were images of children who had not achieved puberty?

5           THE DEFENDANT:  At least some of them were, yes.

6           THE COURT:  All right.  Are you ready for me to ask

7   you how you now plead?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  As to Count 1 in the Indictment in Docket

10  15-CR-136 which accuses you of possession of child pornography,

11  how do you now plead to that count, guilty or not guilty?

12          THE DEFENDANT:  Guilty, Your Honor.

13          THE COURT:  It is the finding of the Court in the case

14  of United States of America versus -- is it J. Christopher?

15          THE DEFENDANT:  J.C. is my actual first name.

16          THE COURT:  All right.  Thank you.  -- J.C.

17  Christopher Pulham that the defendant is fully competent and

18  capable of entering an informed plea; that he's aware of the

19  nature of the charge brought against him in Count 1 of the

20  Indictment and the consequences of a plea of guilty to that

21  charge in Count 1; and that his plea of guilty is a knowing and

22  voluntary plea supported by an independent basis of fact, your

23  own statements concerning the conduct on or around June 16th,

24  2015.

25          It's the Court's conclusion that those statements

Janet Davis, RDR, FCRR                          jbd.davis@gmail.com

1  satisfy each of the essential elements of the offense as

2  charged, and you're now adjudged guilty of this offense.

3            I'd like to set sentencing for 1:30 on February 19th.

4  Between now and February 19th, a Presentence Investigation will

5  be undertaken by an officer of the court.  Mr. John Olive is

6  over here to your left.  He may have some questions for you

7  after this proceeding concludes.  He may also have some forms

8  for you to sign.  You do have the right to have your attorney

9  present during questioning by the Presentence Investigation

10 officer.

11           In terms of the investigation itself, it covers such

12 topics as your background and upbringing, your marital status,

13 whether you have any dependents, your educational history, your

14 work history, your financial circumstances, issues with drug

15 use or abuse, any physical health issues, any mental health

16 issues.  Your offense conduct may be further researched.  Your

17 criminal history, if any, will be further researched.  A

18 guideline calculation will be developed.

19           After the investigation is concluded, a draft report,

20 the draft Presentence Investigation Report, is written.

21 Mr. Olive will mail that to the attorneys or send it by e-mail

22 seeking comments or objections.  Your attorney will talk to you

23 about that report.  I encourage you to read your report

24 carefully, let Mr. Barrett know if you have questions or

25 concerns.  He can make objections or seek clarification or

1    corrections to the report by submitting those back to the

2    probation officer, as can the Government.

3          Once that comment period is ended, a final report is

4    written.  That final report goes to me and to the attorneys

5    again, and you'll have a chance to read that final report, see

6    how the comments or objections were addressed.  The report will

7    have that guideline calculation in it, so you will have a

8    pretty solid sense of what the guideline sentencing range is.

9          At sentencing you do have the right to a timely

10   sentencing and it is a public sentencing, too, so the court --

11   we will be in this courtroom and the courtroom doors, as today,

12   will be open.  So if you have friends or family that want to be

13   here with you, again for sentencing, they're more than welcome

14   to -- to be here.

15         At sentencing the process that I follow is I start

16   with that report and hear from the attorneys about whether

17   there were -- there are any issues still with this report; are

18   there factual issues or legal issues that still need to be

19   resolved.  I will hear arguments on any of those and make my

20   decisions about any factual or legal issues that still might be

21   outstanding.  Oftentimes those affect the guideline

22   calculation.

23         Once I've gone through that process and have all those

24   decisions made, I will put the guideline calculation on the

25   record.  It may or may not be the same one that's in the

1    report, but I'll make that announcement the day of sentencing

2    so you will know what the -- what the sentencing range is based

3    upon my decisions.

4          After that I ask the attorneys what their position is

5    on what the sentence should be.  Your attorney has the chance

6    to go first and last, so he can make his statement about what

7    he thinks the sentence should be.  Then the Government makes

8    its statement and then your attorney can respond if there's

9    anything more to say based upon what the Government has had to

10   say.

11         After that, if there are family members who wish to be

12   heard, I will make time and invite them up to the main podium.

13   They need to come forward just so that I can hear them well and

14   the court reporter can take down their statements because the

15   audio is all run through the microphone system.

16         Sometimes family members aren't comfortable with that

17   or they can't be in attendance.  Your attorney can collect

18   letters and give those to me, and I read the letters that I

19   receive from family, friends, victims, whomever is writing

20   concerning the sentencing.

21         After I have heard from anybody who wishes to be

22   heard, I'll invite you to make any statement you want to make.

23   You have the right to address me before sentence is decided, so

24   I encourage you to think about what, if anything, you would

25   like to say at sentencing.  Some people write their statement

1    out and mail it to me because, again, they just don't feel

2    comfortable speaking in court.  Other people take notes and

3    refer to those notes.  Some people just speak from their heart

4    and say what they -- they think they -- what they think they

5    need to say or I should know.  Some defendants don't have

6    anything more to say.  I encourage you to think about what, if

7    anything, you want to say.  Again, you're not required to

8    speak.  Talk to your attorney.  He will give you good advice

9    about that part of sentencing.

10          I do find often, though, that the defendants provide

11   insightful, good information for me to consider for sentencing.

12   So carefully weigh it, okay?  You know, I don't punish people

13   who really don't have anything more to say; they feel like

14   their attorney has said what needed to be said or their letter

15   said it, but I just encourage you to think about it.

16          After I hear anything you wish to say, I'll make my

17   decision about what the sentence is, and I'll put that on the

18   record.  That, then, is reduced to a writing called a Judgment

19   and Committal Order.  That's the order that would be appealed,

20   depending on whether you've got complaints with what my

21   decision is.

22          Do you have any questions about the Presentence Report

23   or the Presentence Investigation as I've explained it to you?

24          THE DEFENDANT:  No, ma'am.

25          THE COURT:  Do you have any questions about the

1    approach I take at sentencing?

2            THE DEFENDANT:  No, ma'am.

3            THE COURT:  All right.  I know this gentleman has been

4    at liberty, I suspect on bond with supervision.  I think I -- I

5    heard from Ms. Danni that there are no issues with --

6    identified by the probation officer supervising Mr. Pulham --

7    unsecured bond with conditions.

8            The position of the Government?

9            MR. ANDERSON:  This is not an offense that requires

10   detention after plea.  We have no reason to believe that

11   Mr. Pulham has violated any of the terms and conditions of his

12   supervised pretrial release and do not object to his continued

13   release.

14           THE COURT:  All right.  Mr. Barrett.

15           MR. BARRETT:  No objection to his continued release,

16   Your Honor.

17           THE COURT:  All right.  I will -- do you have any

18   issues or concerns with the current conditions of release?

19           THE DEFENDANT:  No, ma'am.

20           THE COURT:  Any questions about the -- you know, in

21   terms of the bond, that secures your attendance, so stay in

22   touch with your attorney.  You do have the right to a timely

23   sentencing, but occasionally we move sentencings around.  If we

24   have a jury trial, we might move you to the front of the week

25   or the Monday of the next week, and so we can tweak it a bit so

DOCKET 15-CR-136-F          CHANGE OF PLEA                    28

1   that you're not right in the middle of a trial.  So I encourage

2   you to stay in touch with your attorney as the process unfolds,

3   not only for the Presentence Report reviews, but to make sure,

4   where you will be traveling, particularly in February, that

5   there aren't any changes in the dates.  Okay.

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  All right.  Well, I'll order release on

8   the same terms and conditions set forward by Judge Rankin in

9   the pretrial process.

10          Is there anything else we should address before we

11  conclude the change of plea?

12          MR. BARRETT:  Nothing I'm aware of, Your Honor.

13          MR. ANDERSON:  No, Your Honor.  Thank you.

14          THE COURT:  All right.  Good luck to you, Mr. Pulham.

15          THE DEFENDANT:  Thank you, Your Honor.

16          THE COURT:  I'll see you back toward the middle of

17  February for conclusion.  Thank you.  We will stand in recess

18  until call.

19      (Proceedings concluded 2:21 p.m., December 11, 2015.)

20

21

22

23

24

25

1                C E R T I F I C A T E

2

3

4

5          I, JANET DAVIS, Federal Official Court Reporter for

6     the United States District Court for the District of Wyoming, a

7     Registered Diplomate Reporter and Federal Certified Realtime

8     Reporter, do hereby certify that I reported by machine

9     shorthand the foregoing proceedings contained herein on the

10    aforementioned subject on the date herein set forth, and that

11    the foregoing pages constitute a full, true and correct

12    transcript.

13

14          Dated this 31st day of March, 2016.

15

16

17                    /s/ Janet Davis

18          _____

19                    JANET DAVIS
                Registered Diplomate Reporter
20         Federal Certified Realtime Reporter
                United States Court Reporter

21

22

23

24

25